FILED
U. S. DISTRICT COURT
DISTRICT OF NEBRASKA
2018 JUL 12 AM 11: 56

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TAYLOR MICHAEL WILSON,<br><br>Defendant. | 4:18CR3005<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Joseph P. Kelly, United States Attorney and Lesley A. Woods, Assistant United States Attorney, and defendant, TAYLOR MICHAEL WILSON, and Jerry Sena, counsel for defendant, as follows:

## I

## THE PLEA

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count I of the Indictment. Count I charges a violation of Title 18, United States Code, Section 1992.

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. The United States will move to dismiss Count II at the time of sentencing.

2. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for any firearms or national security crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

3. This plea agreement is part of a "package" disposition. In order for defendant to receive the benefit of this agreement, the defendant also must plead guilty at the same time to Count IV of the Indictment issued by the grand jury for the Eastern District of Missouri in case 4:18CR00090. Count IV of that indictment charges the defendant with the knowing receipt and

1

possession of an unregistered firearm, a 9 mm Luger caliber CZ Model Scorpion Evo 3 S1 rifle. Further, defendant expressly acknowledges his understanding that the disposition contemplated by this agreement is part of a "package" disposition with the United States Attorney's Office for the Eastern District of Missouri wherein the obligations of the United States under the agreement are conditioned on the performance by defendant of his obligations under the agreement.

II

**NATURE OF THE OFFENSE**

A. ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

1. On or about October 22, 2017, in the District of Nebraska, the defendant knowingly and without lawful authority or permission did attempt to wreck, derail, set fire to, or disable railroad on-track equipment or a mass transportation vehicle, Amtrak train A61198;

2. The defendant's conduct described in the first element affected a mass transportation provider, or a railroad carrier engaged in interstate or foreign commerce; and the defendant traveled across the State Line of Nebraska in order to commit the offense; and

3. The mass transportation vehicle was carrying 175 passengers and employees at the time of the defense.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. That on or about October 19, 2017, the defendant boarded Amtrak train A61198 in the State of California, and the defendant remained on board on October 22, 2017, as the train crossed into the State of Nebraska.

2. When boarding the train, his main luggage consisted of: a respiratory mask, a hammer, knife, speed loaders, .380 caliber ammunition, material and identification cards relating to the National Socialist Movement and a sleeping bag. He carried a .380 caliber handgun on his person during this trip. It is against Amtrak policy for passengers to carry firearms on the train.

2

3. On or about October 28, 2017, the defendant, with his handgun still tucked in the waistband of his pants, entered a secured engine compartment of the train. Signs posted outside the engine compartment put the defendant on notice that he was not authorized to be in this area. After entering the unauthorized area, he proceeded to disable the train and cut the lights to the passenger compartments. This caused emergency alerts to go out to Amtrak personnel, conductors, and assistant conductors on board the train.

4. Train passengers were suddenly in the dark. Train personnel were running up and down the aisles of the train attempting to determine the cause of the emergency stop in rural Furnas County, Nebraska. Some passengers, in fear, attempted to escape through the train's windows. Passengers became aware that another passenger had entered into the train's engine and that caused the sudden stop and the lights to fail, increasing the panic on board the train.

5. There were 175 passengers on board Amtrak train A61198, as well as numerous Amtrak employees and conductors. Amtrak trains are mass transportation vehicles, as defined by federal law.

6. One conductor, trying to determine the cause of the train's disabling, noticed the defendant inside the engine compartment of the train. The conductor joined another conductor and an assistant conductor to enter the engine compartment of the train to try to forcibly remove the defendant. As the conductors worked together to subdue the defendant, the defendant said, "I'm the conductor now, bitch!" While one conductor tried to subdue the defendant, the defendant tried to break free and grabbed for his waistband, where first responders would later recover the handgun from the defendant at his arrest.

7. The defendant disabled the train near the Furnas County line in the city of Oxford, Nebraska. Deputies from the Harlan County Sheriff's office and from the Furnas County Sheriff's Office responded to the train. Because of the remote area, it took deputies over thirty minutes to get to the scene to assist the train's conductors. The conductors were forced to hold the defendant until law enforcement arrived. The conductors were able to keep the defendant from getting to the firearm concealed on his person.

8. The first deputy to arrive on scene found the handgun defendant concealed in his waistband. When approached by the deputy, the defendant denied that he was armed. A second deputy arrived as the first deputy was disarming the defendant. The second deputy wore a body camera on the outside of his uniform. This video footage captured the first deputy disarming the

defendant, as one of the conductors assisted. The video depicts the defendant turning towards the second deputy as he is walking up to the defendant, and then make a shooting sound at the deputy. The defendant then turned past others in the crowd, focused on the conductor next to him that was helping to hold him in custody, and made a shooting sound at the conductor in the same manner that he did with the deputy sheriff.

9. The defendant uttered racial slurs and insults to the conductor. When asked, "So if you weren't in the military, what are you? Some crazy fanatical type?" and the defendant replied, "No comment." The defendant later told a deputy, "Human beings are a plague on the planet." When asked again why he disabled the train, the defendant said, "I got a reason for doing what I'm doing. I stopped the fucking train." The defendant went on to quote Frederick Nietzsche and explain the problems with the world and then told the deputy, "I was going to save the train from the black people."

10. An Amtrak investigator's summary of the incident completed at defendant's request noted that the defendant was found by the crew in the trailing locomotive and that the defendant made statements to the effect of taking the train to the stars and trying to find the conductor. The investigator found no evidence that the defendant made statements intending violence, but the investigator did not investigate on scene and did not personally interview the government's lead witnesses. The investigator indicated that he received information that the defendant was very intoxicated, but the deputies on scene gave statements that he did not show signs of being under the influence of narcotics.

11. In late December, 2017, agents executed a search warrant at the defendant's residence in St. Charles, Missouri. Defendant had hollowed out portions of his walls where he concealed in those areas propaganda relating to the National Socialist movement, body armor, ammunition, and pressure plates that can be used to make an explosive device. During the search agents also recovered documents and evidence of the defendant's ideologies. Agents also recovered numerous firearms from the defendant's possession. Some of the firearms were prohibited weapons that no one may legally possess under federal law, unless they are properly registered, including a fully automatic machine gun and a short barrel rifle.

12. The collection of handwritten papers that were seized included the following writings of the defendant:

     a. "Buschwackers. Guerillas. LSA. IRA. PLO. SS. Pretty much who I would like to be."

     b. "Iran and Saudi are gonna duke it out pretty soon need to get a plane ticket. If someone knocked on the door I would go."

     c. "PWS short subgun," and then next to it, the defendant's signature.

     d. "National Socialism: Victory or Death!"

     e. The defendant wrote a play entitled, "ISIS patrols on American Street," and email records obtained by search warrant revealed that the defendant had purchased a plane ticket with plans to ultimately travel to Syria in the year prior to this incident. It was further determined that defendant had considered travel to the Middle East to fight with ISIS. The defendant decided ultimately not to go after he purchased the ticket.

There were also numerous derogatory and threatening comments about the Jewish race and African Americans in the journals, and statements about the defendant's frustration with American government, society, and the media.

13. The defendant told a cell mate that he "dropped acid," right before he loaded his weapon and entered the secure compartment of the train.

## III
## PENALTIES

A. COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A term of imprisonment of up to life in federal prison;
2. A maximum $ 250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than five years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. ' 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that the base offense level for Count One is level thirty (30), pursuant to U.S.S.G. § 2A5.2.

3. The parties agree that the defendant should receive a four (4) level offense increase because a dangerous weapon was otherwise used or threatened, pursuant to U.S.S.G. § 2A5.2(b)(1)(ii) or (iii).

4. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

5. The parties disagree as to whether role adjustments apply in the present case, and each party reserves the right to put forward evidence in support of its position at time of sentencing.

6. The Defendant acknowledges restitution will be ordered as a part of the sentence in this case, and the Defendant agrees the Court may order restitution to all persons or organizations for loss or harm directly and proximately caused by the Defendant's relevant conduct regardless whether that person or organization is a victim of the offense of conviction.

7. The Defendant understands that a schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on methods, available to the United States to enforce the judgment. If incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless whether the Court specifically directs participation or imposes a payment schedule. Pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in Section 3613. The Defendant agrees to provide all of Defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam.

B. ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

C. ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D. CRIMINAL HISTORY.

The parties have no agreement as to the defendant's criminal history.

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII

## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only

withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

### MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
JOSEPH P. KELLY
United States Attorney

7/12/2018
Date

LESLEY A. WOODS
ASSISTANT U.S. ATTORNEY

7/10/2018
Date

TAYLOR MICHAEL WILSON
DEFENDANT

07/10/2018
Date

JERRY SENA
COUNSEL FOR DEFENDANT