```
 1                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF NEBRASKA
 2

   UNITED STATES OF AMERICA,      )
 3                                 )   4:18CR3074
            Plaintiff,             )   4:18CR3005
 4                                 )   July 12, 2018
       vs.                         )   11:18 a.m.
 5                                 )   Lincoln, Nebraska
   TAYLOR MICHAEL WILSON,          )
 6                                 )
            Defendant.             )
 7

 8

 9

10              TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
                 BEFORE THE HONORABLE CHERYL R. ZWART
11                  UNITED STATES MAGISTRATE JUDGE

12

13
                         A-P-P-E-A-R-A-N-C-E-S
14

   FOR THE PLAINTIFF:            Lesley A. Woods
15                               Assistant United States Attorney
                                 100 Centennial Mall North
16                               487 Federal Building
                                 Lincoln, Nebraska 68508
17

18 FOR THE DEFENDANT:            Jerry Sena
                                 Sena, Polk Law Firm
19                               2712 South 87th Avenue
                                 Omaha, Nebraska 68124
20

21 TRANSCRIBER:                  Allan G. Kuhlman
                                 11408 N. Vista Ranch Place
22                               Marana, Arizona 85658
                                 (520) 989-0626
23

24
   Proceedings recorded by digital recording; transcript
25 produced with computer.
```

1              (At 11:18 a.m. on July 12, 2018, with counsel for

2     the parties and the defendant present, the following

3     proceedings were had:)

4              THE COURT:  We're on the record in two cases, case

5     number 4:18CR3005 and case number 4:18CR3074.

6              Both cases are indictments by the United States

7     against Taylor Michael Wilson.

8              Counsel, please enter your appearance.

9              MS. WOODS:  Yes, Your Honor, please show the

10    appearance of Lesley Woods for the United States.

11             MR. SENA:  Good morning, Your Honor.  Please show

12    the appearance of Jerry Sena on behalf of defendant Taylor

13    Wilson, who is present.

14             THE COURT:  Mr. Wilson, you are Taylor Michael

15    Wilson, correct?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  You are here today because I've been

18    told that you want to enter a plea of guilty to an indictment

19    that arises out of this district, and that is the earlier

20    case number, 3005, and an indictment that arises out of the

21    Eastern District of Missouri, and their case number was

22    4:18CR90.

23             Were you aware that that's why you're here today?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Let me talk to you first about the case

1    that comes out of Missouri.

2         You have the right to go back to Missouri if you

3    choose to and litigate the case there.  Do you understand

4    that?

5         THE DEFENDANT:  Yes, ma'am.

6         THE COURT:  I have what is called a Rule 20 consent

7    form filed here.

8         What that means is that the government has agreed

9    that if you are willing to plead guilty in this district to

10   the Missouri indictment, that Missouri is willing to let you

11   do that rather than go back there and face charges.  Did you

12   agree to that?

13        THE DEFENDANT:  Yes, ma'am.

14        THE COURT:  I need to make sure that you understand

15   what the allegations are in the indictment out of Missouri.

16        At this time -- at least the one to which you are

17   pleading guilty -- at this time I'm going to have Ms. Woods

18   explain that allegation to you and the possible penalty

19   you're facing.  Miss Woods?

20        MS. WOODS:  Yes, Your Honor, the indictment charged

21   four counts.

22        I believe the defendant intends to plead guilty to

23   Count IV so I will summarize that.

24        The grand jury alleged that from on or about

25   September 2015 through December 23rd, 2017, in the Eastern

1    District of Missouri and elsewhere, that he, Taylor Wilson,

2    the defendant, did knowingly receive and possess a firearm,

3    that being a nine millimeter Luger caliber CZ model Scorpion

4    rifle that would have a specific serial number that is

5    alleged there, and the issue with that being it was not

6    registered to the defendant in the National Firearms

7    Registration and Transfer Record.

8           This is a violation of Title 26, United States Code,

9    Section 5861(d) and punishable under another section of that

10   code.

11          Mr. Wilson, do you understand this charge from the

12   Eastern District of Missouri?

13          THE DEFENDANT:  Yes, ma'am.

14          MS. WOODS:  And I believe the possible penalty for

15   that is up to ten years in federal prison, a $250,000 fine,

16   and up to three years of supervised release.  Do you

17   understand the possible penalty, sir?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  All right.  Because my understanding is

20   Mr. Wilson hasn't actually gone to Missouri and received an

21   initial appearance, correct?

22          MS. WOODS:  Your Honor, it's interesting, the

23   complaint in our case, he had his initial there under Rule 5

24   from our case.

25          So he was before a Missouri judge, but it was on our

1    case.

2              THE COURT:  I think in the interest of completeness,

3    even though I mis-worded it, I said let's do the charge to

4    which he intends to plead guilty, I think we should advise

5    him of all of the charges that he's facing out of Missouri.

6              So please advise him of the other charges that he's

7    facing out of Missouri as well.

8              MS. WOODS:  I will, Your Honor, and what I've got

9    for that is four counts.

10             In addition to the fourth count, which we just

11   summarized, the first count alleges the same date, on or

12   about September 2015 through December 23rd, 2017, in the

13   Eastern District of Missouri and elsewhere, that he did

14   possess a machine gun, that being a Pioneer Arms submachine

15   gun with a specific model number and caliber identified.

16             This is in violation of Title 18, United States

17   Code, Section 922(o) and punishable under 924(a)(2).

18             Count II concerns the same weapon, that from on or

19   about September 2015 through December 23rd, 2017, in the

20   Eastern District of Missouri, that he did knowingly possess

21   that firearm, a submachine gun, that had been shipped and

22   transported in interstate commerce at some time prior to his

23   possession, but that had an obliterated, removed or altered

24   serial number.

25             This would be in violation of Title 18, United

1    States Code, Section 922(k) and 924(a)(1)(B).

2           The third count alleges the same dates in the

3    Eastern District of Missouri that he did knowingly possess a

4    machine gun, again that same submachine gun, that was not

5    registered in the National Firearms and Transfer Record.

6           And that's going to be the same count, for Count IV,

7    but a different weapon, so the statutes would also be the

8    same, in violation of Title 26, United States Code, Section

9    5861(d) and punishable under Section 5871 of that same title.

10          Mr. Wilson, I know you previously acknowledged you

11   understand Count IV.

12          Do you also understand the other three counts that

13   the Eastern District of Missouri alleged?

14          THE DEFENDANT:  Yes.

15          MS. WOODS:  And then the penalties for those, the

16   first one is not more than ten years in federal prison, with

17   a fine of $250,000, or both, supervised release, and not more

18   than three years, and there is an option that if they had

19   chosen so they could do a mandatory minimum of thirty years

20   on that count.

21          For the possession of a firearm with an obliterated

22   serial number it's not more than five years, not more than a

23   $250,000 fine, supervised release of not more than three

24   years, and a one hundred dollar special assessment.

25          For the third count and the fourth count it's the

1   same as before.

2          Ten years, up to a $250,000 fine -- up to ten years,

3   -- I'm sorry -- supervised release of not more than three

4   years and a mandatory one hundred dollar special assessment

5   for all four counts.

6          Mr. Wilson, do you understand the four charges and

7   the four possible penalties from the Eastern District of

8   Missouri?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  All right.  I previously advised you of

11  your constitutional rights.

12         Do you need a reminder of your right to remain

13  silent?

14         THE DEFENDANT:  No, ma'am.

15         THE COURT:  Do you need a reminder of your right to

16  counsel?

17         THE DEFENDANT:  No, ma'am.

18         THE COURT:  You have the same trial rights on the

19  Missouri indictment as you do on the current indictment, on

20  the Nebraska indictment.

21         Do you need a reminder of your trial rights?

22         THE DEFENDANT:  No, ma'am.

23         THE COURT:  Now, my understanding is you haven't

24  actually appeared before the Missouri court on the Missouri

25  indictment.

1          You have at least -- you have the right to take at

2     least thirty days after you appear before that court to

3     decide how you want that indictment to be handled, whether

4     pleading guilty or whether going to trial.

5          Knowing that you could take additional time, first

6     of all going back to Missouri and then taking at least thirty

7     days thereafter, do you want to still plead guilty here

8     today?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.  Please raise your right

11    hand.

12         Do you solemnly swear to tell the truth, the whole

13    truth, and nothing but the truth?

14         THE DEFENDANT:  Yes.

15         THE COURT:  You're now under oath.  You have sworn

16    to tell the truth, which means if you lie during this

17    proceeding you can be separately prosecuted for the crime of

18    perjury.  Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  You've already heard the charge in the

21    Missouri indictment to which you are intending to plead

22    guilty.

23         I'm going to have Ms. Woods in a moment here

24    describe the charge in the Nebraska indictment to which you

25    intend to plead guilty.

1          Before we go down that path, though, I need to make

2     sure you understand, sir, that I am not your sentencing judge

3     and I am not the judge who is going to determine whether your

4     guilty pleas are accepted and whether your plea agreements

5     are accepted.

6          Those matters will be taken up by Judge Gerrard, who

7     is your sentencing judge.

8          But what I can do for you today is gather some

9     information from you and make a recommendation to him on

10    those issues.

11         Do you agree to proceed before me?

12         THE DEFENDANT:  Yes.

13         THE COURT:  At this time then I'm going to have

14    Ms. Woods explain the Nebraska indictment to which you intend

15    to plead guilty and the possible penalties you face.

16    Ms. Woods?

17         MS. WOODS:  Yes, Your Honor.  In the District of

18    Nebraska two counts were charged.

19         The first count is the count to which the defendant

20    intends to plead guilty today, is my understanding.

21         Count I alleges that on or about October 23rd, 2017,

22    in the District of Nebraska and elsewhere, the defendant,

23    Taylor Michael Wilson, did knowingly attempt to and threaten

24    to wreck, derail and disable a mass transportation vehicle,

25    that being Amtrak train A61198, a mass transit provider, and

1    a railroad carrier engaged in interstate commerce.

2              In order to commit the offense he had to cross the

3    state line and that aided in the commission of the offense

4    and the railroad track equipment was carrying passengers and

5    employees at the time of the offense.

6              This is in violation of 18, United States Code,

7    Section 1992(a)(1)(10) and Section (b)(1) for the penalty.

8              The possible penalty for that offense is up to life

9    in prison, up to a $250,000 fine, and up to three years of

10   supervised release -- I'm sorry -- up to five years of

11   supervised release.

12             Mr. Wilson, do you understand Count I and the

13   possible penalties?

14             THE DEFENDANT:  Yes.

15             MS WOODS:  There is also a mandatory one hundred

16   dollar special assessment.  Do you understand that?

17             THE DEFENDANT:  Yes.

18             MS. WOODS:  Your Honor, would you like me to

19   summarize the count he's not pleading to?

20             THE COURT:  No.  He's already been arraigned on that

21   one.  I just wanted to make sure he understood everything

22   that was pending against him out of Missouri before we go

23   forward.

24             Do you understand the charges in Count I of the

25   Nebraska indictment and the possible penalties?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  And do you understand the charges in

3    Count IV of the Missouri indictment and the possible

4    penalties?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Having heard that information again, is

7    it still your intent to plead guilty?

8              THE DEFENDANT:  Yes.

9              THE COURT:  I have in front of me a petition to

10   enter a plea of guilty and two plea agreements.  Do you have

11   those documents in front of you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Going to the petition, it has all of

14   those questions and answers in it, it appears that you signed

15   that on July 10th.  Is that right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And you signed both of the plea

18   agreements on the same date; is that correct?

19             THE DEFENDANT:  Yes.

20             THE COURT:  When you went over these documents was

21   Mr. Sena, your attorney, with you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Going to the petition to enter a plea of

24   guilty, that has all those questions and answers in it, did

25   you read the questions?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is this your handwriting or your

3    attorney's?

4          THE DEFENDANT:  His.

5          THE COURT:  I take it then that you answered the

6    questions out loud?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Were the answers you stated out loud

9    true?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Did Mr. Sena write down your answers?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did he write them down correctly?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And after going through the document did

16    you sign it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Going to the plea agreement, first of

19    all the plea agreement that comes out of Missouri, did you

20    read the plea agreement?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did your attorney explain the plea

23    agreement to you?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Were there any questions about this plea

1    agreement that he was unable to answer?

2              THE DEFENDANT:  No.

3              THE COURT:  Going to the plea agreement out of

4    Nebraska, did you read that plea agreement?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did your attorney explain it to you?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Were there any questions about that plea

9    agreement that he was unable to answer?

10             THE DEFENDANT:  No.

11             THE COURT:  And after going through the plea

12   agreements, did you sign them?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And after going through the petition,

15   did you sign it?

16             THE DEFENDANT:  Yes.

17             THE COURT:  When you went over these documents on

18   July 10th, were you under the influence of drugs or alcohol

19   or anything that would impair your thinking?

20             THE DEFENDANT:  No.

21             THE COURT:  Are you under the influence of anything

22   right now?

23             THE DEFENDANT:  No.

24             THE COURT:  Has anybody threatened you in any way to

25   get you to plead guilty?

1              THE DEFENDANT:  No.

2              THE COURT:  Has anybody promised you anything, other

3     than the promises in the plea agreements themselves, to get

4     you to plead guilty?

5              THE DEFENDANT:  No.

6              THE COURT:  Do you understand, sir, if the court

7     accepts your plea of guilty you will be found guilty of a

8     felony?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that you have the

11    right to plead not guilty and make the government try to

12    prove this case at trial?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand you are giving up your

15    trial rights by pleading guilty?

16             THE DEFENDANT:  Yes.

17             THE COURT:  You've been represented in this case by

18    Mr. Sena.  Is that correct?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you believe that he has investigated

21    this case sufficiently so that you know what to do today?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Are you satisfied with his

24    representation?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand, sir, that if you

2    chose to go to trial you would have the right to counsel

3    representation at the trial?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And if you could no longer afford

6    counsel representation, counsel could be appointed for you at

7    no cost to you.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that if you chose to

10   go to trial you would have a jury trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that at that trial you

13   would have right to see and hear the witnesses who testify

14   against you and to have them cross-examined on your behalf?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that you would have

17   the right to call witnesses for you and if they will not come

18   voluntarily you can get a court order called a subpoena to

19   make them come and testify?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that if you chose to

22   go to trial you could testify yourself if you wanted to or

23   you could exercise your right to remain silent?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you remain

1    silent at the trial the jury would not be allowed to consider

2    that silence in deciding whether you are guilty?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And finally, sir, do you understand that

5    if you chose to go to trial the government would not get a

6    conviction against you on either the Nebraska or the Missouri

7    charges unless it was able to prove to every single juror

8    that you were guilty beyond a reasonable doubt?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Are you willing to give up all of those

11   trial rights and plead guilty in this case instead?

12             THE DEFENDANT:  Yes.

13             THE COURT:  With a guilty plea you will have a

14   felony record and with that felony record comes the loss of

15   civil rights.

16             Those rights include the right to vote, the right to

17   serve on a jury, the right to hold a public office, the right

18   to carry a weapon.

19             You can also lose federal benefits, but you will

20   lose rights.  Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And knowing that you will lose civil

23   rights, are you willing to plead guilty?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You're looking at a sentence in this

1    case on Count I of the Nebraska indictment of up to life in

2    prison.

3           A possible fine of up to $250,000 could be imposed

4    in addition to any term of imprisonment.

5           Supervised release of at least five years and a one

6    hundred dollar mandatory special assessment.

7           Is that your understanding of what you're facing on

8    the Nebraska indictment?

9           THE DEFENDANT:  Yes.

10          THE COURT:  On the Missouri indictment you are

11    facing up to ten years in prison, a possible fine of up to --

12    is that supposed to be ten thousand dollars?

13          MS. WOODS:  It's actually 250, according to the

14    section, Your Honor.  That's what I advised.  I think it's an

15    error in the agreement.

16          I don't think we will seeking a fine in this case,

17    but in an abundance of caution I advised of the highest

18    possible, which from review of the statute was 250.

19          THE COURT:  And it is up to five years of -- three

20    years of supervised release; is that correct?

21          MS. WOODS:  Yes, Your Honor, that's correct.

22          THE COURT:  So we should correct this, probably

23    should correct the petition to say 250 instead of ten

24    thousand.

25          MS. WOODS:  Your Honor, I think that's not the

1    defense's fault.  I know St. Louis put it in their penalty

2    portion of their agreement, so that's probably where it came

3    from.

4              THE COURT:  Does somebody have the original?  Let's

5    correct it by interlineation to $250,000 and have your client

6    initial that.

7              All right, and we'll get a copy of the corrected one

8    after the hearing is over, but for right now on Count IV of

9    the Missouri indictment you are facing up to ten years in

10   prison, a possible fine of up to $250,000, or both the fine

11   and imprisonment, supervised release of up to three years,

12   and a one hundred dollar special assessment.

13             Is that your understanding of what you're facing on

14   the Missouri indictment?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Has Mr. Sena explained the sentencing

17   guidelines to you?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Has he explained that those guidelines

20   provide the starting point that Judge Gerrard will look at in

21   determining what your sentence ought to be?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Has he explained that those guidelines

24   provide only the starting point that Judge Gerrard will look

25   at?

1             THE DEFENDANT:  Yes.

2             THE COURT:  For example, he's going to consider such

3    things as the facts underlying the counts that are being

4    dismissed in this case.  Do you understand that?

5             THE DEFENDANT:  Yes.

6             THE COURT:  He's also going to look at whether you

7    have a criminal history, what kinds of crimes are reflected

8    in that criminal history, those types of things.  Do you

9    understand that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And once Judge Gerrard considers all of

12   your relevant conduct and makes his findings, do you

13   understand he can sentence you within the guidelines that

14   you've discussed with Mr. Sena, but he doesn't have to.  Do

15   you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Do you understand that he can sentence

18   you above or below those guidelines, based upon his

19   determination?

20            THE DEFENDANT:  Yes, ma'am.

21            THE COURT:  And once Judge Gerrard determines how

22   much time you will spend in prison, do you understand you

23   will be required to serve all of that time?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Do you understand the most you could

1    ever get off that sentence is 54 days per year for good time

2    served, and then only if you earn that good time while in

3    prison?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Now after you serve your time in prison

6    you will be placed on supervised release for up to five

7    years.

8              I want to make sure that you understand what that

9    means.

10             At the time of sentencing Judge Gerrard can include

11   a list of rules that you have to follow for up to five years

12   after you get out of jail.

13             Those are called conditions of release.  Do you

14   understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that if you violate

17   those rules you can be brought back to court and sent back to

18   jail?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that if you violate

21   those rules by committing another crime your penalty or

22   sentence on that separate crime could be greater than it

23   otherwise would have been, merely because you were still

24   serving the sentence in these cases when you committed the

25   next crime.  Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You will be required to pay a one

3   hundred dollar mandatory special assessment per count to

4   which you are pleading guilty for a total of two hundred

5   dollars.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is there restitution in this case?

8          MS. WOODS:  There could be, Your Honor, in Nebraska.

9          THE COURT:  On the Nebraska case in particular the

10  government may present evidence of the harm you caused by

11  your criminal conduct and they'll present that evidence to

12  Judge Gerrard at the time of sentencing.  Do you understand

13  that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Judge Gerrard after considering that

16  evidence may require you, as part of your sentence, to pay

17  for that harm.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  By the way, that is called restitution.

20  In other words, when you have to pay for the conduct that you

21  caused, or the harm you've caused by criminal conduct, that

22  is called restitution and can be imposed as part of your

23  sentence in this case.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  You have two plea agreements

 1    with the government.  One arises out of Missouri, one arising

 2    out of Nebraska.

 3            At this time I am going to have Ms. Woods explain

 4    those plea agreements to you aloud.

 5            I'm going to have her start with Missouri and end

 6    with Nebraska.

 7            Please listen as she does that.  I will ask you

 8    questions about what she says.

 9            And in fact after Missouri is done, I will ask him

10    if he understands it, and then we will go to Nebraska and ask

11    him if he understands it.  All right?  Ms. Woods.

12            MS. WOODS:  I think while we're doing

13    interlineations, I notice the St. Louis agreement has him as

14    Tyler in the first line of their parties paragraph.

15            THE COURT:  Let's get that fixed, too.  My guess is

16    they scrambled to pull this together for today.  Understood.

17            MR. SENA:  Your Honor, we fixed both the Tyler and

18    the 250.

19            THE COURT:  Thank you.  Now listen to Ms. Woods.

20            MS. WOODS:  Mr. Wilson, it's my understanding of

21    your agreement with the Eastern District of Missouri that you

22    have agreed to plead guilty to Count IV of their indictment.

23            That you are represented by Mr. Sena in this case

24    and this agreement only binds the United States Attorney's

25    Office for the Eastern District of Missouri and no other

1    office.

2              In addition, in exchange for your plea of guilty to

3    Count IV, the Eastern District of Missouri has agreed to

4    dismiss Counts I, II, and III at the time of sentencing and

5    not to seek any further federal prosecution against you in

6    that district relative to possession of machine guns and

7    unregistered firearms.

8              In addition, you agree that the guidelines that you

9    have agreed to with the Eastern District of Missouri are the

10   result of negotiation and analysis by both sides and that

11   yourself or the Eastern District could seek a higher or lower

12   guidelines range at the time of sentencing.

13             You have also agreed to forfeit to the United States

14   a list of property which is laid out in that agreement.

15             The first eight items are all weapons that are

16   described by serial number, make and model.

17             And then beginning with items 9 through 16, these

18   are items that they identified that were seized but the

19   serial numbers had either been removed or altered, and all of

20   these firearms were seized on December 22nd, 2017, and the

21   forfeiture also includes body armor and ballistic materials,

22   ammunition and firearms magazines.

23             It is my further understanding of your agreement

24   with them that there are certain guidelines agreements that

25   you have all reached together and the first is that the base

1     offense level is 18 for this.

2          That the specific offense characteristic of an

3     increase of four levels for an obliterated serial number is

4     appropriate in your case and that you should receive a

5     reduction for acceptance of responsibility if your

6     responsibility meets that as defined by this agreement.

7          In addition to that the determination of your

8     criminal history category will be left to the court and the

9     parties agree the court is not bound by the guidelines

10    analysis of this agreement because the parties may not have

11    foreseen all the applicable guidelines.  The court may in its

12    discretion apply or not apply them.

13         There is also waiver of appeal and post-conviction

14    rights that you have agreed to in this agreement.

15         Specifically on direct appeal with non-sentencing

16    issues, you have waived all right to appeal

17    non-jurisdictional, non-sentencing issues, and that is

18    including and not limited to pretrial motions, discovery,

19    this plea of guilty, and the constitutionality of the statute

20    to which you are pleading guilty.

21         In regards to sentencing issues, you waive your

22    right to appeal all sentencing issues, other than criminal

23    history, and then only when it affects the base offense level

24    or the criminal history category.

25         The government also waives right to appeal

1   specifically all sentencing issues, other than criminal

2   history, provided this plea is accepted.

3          There is also a post-conviction appellant process

4   and/or a collateral attack and in regards to that you have

5   waived rights to attack that unless you have a claim of

6   prosecutorial misconduct or ineffective assistance of

7   counsel.

8          It is also part of your agreement with the Eastern

9   District of the Missouri that you will waive rights to any

10  records that pertain to this case.

11         And that the forfeiture items that we outlined

12  earlier, that you are agreeing you will waive your interest

13  in those items seized by law enforcement over the course of

14  the investigation.

15         Finally in paragraph nine you have agreed to waive a

16  series of rights in relation to your case, whether it's

17  pretrial, rights to a jury trial, and all of those are listed

18  out in detail here, and that is also part of your agreement

19  with the Eastern District of Missouri, that you are

20  acknowledging that you are voluntarily waiving all of those

21  trial and pretrial rights.

22         You've also agreed that your plea of guilty is

23  freely and voluntarily made and entered into and is of your

24  own free will and you are in fact guilty of Count IV of their

25  indictment.

1          Finally you have agreed that you have no right to

2    withdraw this plea entered into the agreement unless the

3    court rejects it.

4          That is my understanding of the agreement with the

5    Eastern District of Missouri, Your Honor.

6          THE COURT:  Mr. Sena, does that fairly summarize the

7    agreement out of Missouri?

8          MR. SENA:  Yes, Your Honor.

9          THE COURT:  Mr. Wilson, did you listen as Ms. Woods

10   described that agreement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Does her description match your

13   understanding of your agreement out of Missouri?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Under this agreement you are agreeing

16   that you are waiving your right to appeal with limited

17   exceptions.

18         Those exceptions appear to be -- you are waiving

19   your right to appeal except as to claiming this court didn't

20   have jurisdiction, or what you are admitting to here today is

21   not a crime, or you're not waiving your right to appeal, I

22   take it, if I'm understanding this correctly, if the

23   government or if Judge Gerrard does not -- what is the

24   sentencing one?  Theirs looks so different than ours.

25         MS. WOODS:  It is very different than ours.  It

1   looks like they break it up into sentencing and

2   non-sentencing and the sentencing issues are narrower, is the

3   way I read it, than non-sentencing.

4           THE COURT:  You are waiving your right to appeal any

5   sentencing issues, other than criminal history, and the

6   government is waiving all sentencing issues, other than

7   criminal history, provided the court accepts the plea.  Do

8   you understand all of these exceptions?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Has your attorney gone over them with

11  you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You are also giving up your right to

14  collateral attack.

15          What collateral attack means is you can challenge

16  your conviction and your sentence by claiming your

17  constitutional rights were violated during this process.  Do

18  you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Under the Missouri agreement you're

21  giving up your right to collateral attack unless you are

22  claiming that the prosecutor committed misconduct, or that

23  your attorney provided you with ineffective assistance of

24  counsel.  Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Did you agree to those waivers of appeal

2    rights and post-conviction rights in the Missouri plea

3    agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  With the exceptions listed in that plea

6    agreement, correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now I am going to have Ms. Woods explain

9    the Nebraska plea agreement, which is somewhat different than

10   the Missouri one.

11         So I'm glad that you have an attorney who sat down

12   and talked to you about all of this.  Ms. Woods?

13         MS. WOODS:  Thank you, Your Honor.  Mr. Wilson, it's

14   my understanding of your agreement with the District of

15   Nebraska that you have agreed to plead guilty to Count I of

16   the Nebraska indictment which charges a violation of 18,

17   United States Code, Section 1992.

18         In exchange for that the United States will move to

19   dismiss Count II at the time of sentencing and agrees that

20   you will not be federally prosecuted for any firearms or

21   national security crimes as disclosed in the discovery

22   material.

23         The plea agreement with the District of Nebraska is

24   part of a package disposition and what that means is

25   essentially in order for you to get the benefits of this

1   agreement you must also plead guilty at the same time to

2   Count IV of the indictment issued by the grand jury for the

3   Eastern District of Missouri and that would be the agreement

4   we just summarized.

5           Count IV of that indictment charges you with knowing

6   receipt and possession of an unregistered firearm, and that

7   is that Scorpion rifle that we discussed earlier.

8           And it's my further understanding of the agreement

9   that it only binds the United States Attorney's Office for

10   the District of Nebraska and binds no other prosecuting

11   authority.

12           Just as you did in the Eastern District of Missouri

13   agreement, you've made agreements with us about the

14   sentencing guidelines in your case, but again the parties

15   understand that these are advisory guidelines and only one of

16   the factors the court will consider in your case.

17           First off the parties agree the base offense level

18   for Count I is level 30 pursuant to the guideline listed.

19           The parties agree there is a four level increase

20   because a dangerous weapon was otherwise used or threatened.

21           And also the parties agree to a reduction in your

22   case for acceptance of responsibility if the terms of that

23   are met.

24           The parties disagree as to whether role adjustments

25   apply and each party reserves the right to put forward

1    evidence at sentencing for its side.

2            You do acknowledge that restitution will be ordered

3    in this case.

4            You retain the right to recommend or request

5    additional downward departures and adjustments in your case

6    at the time of sentencing if you make motions to that effect.

7            You have also waived your right to appeal and

8    collateral attack in this agreement.

9            In the case in the District of Nebraska you have

10   waived all rights on direct appeal except for a claim of

11   ineffective assistance of counsel.

12           And then in that collateral attack or

13   post-conviction proceeding that we've previously described to

14   you, you still retain appellant rights in two areas, and that

15   is a claim based on ineffective assistance of counsel, and a

16   legal determination by a higher court that 18, United States

17   Code, Section 1992, the charge to which you are pleading, has

18   failed to state a crime.

19           I believe, Your Honor, that is it for the key

20   provisions of our agreement.

21           THE COURT:  All right.  Mr. Sena, do you believe

22   that that fairly summarizes the Nebraska plea agreement?

23           MR. SENA:  Yes, Your Honor.

24           THE COURT:  Mr. Wilson, did you listen as Ms. Woods

25   described that agreement?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Does her description match your

3   understanding of your agreement with the government in

4   Nebraska?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Under the terms of this plea agreement

7   there is, like the Missouri one, waivers of appeal and

8   collateral attack and I need to make sure you understand what

9   you're giving up there.

10          Whether in the Missouri case or in the Nebraska case

11  you have the right to appeal, unless you give up that right,

12  and what that means is have another set of judges look at

13  everything that's been done in this case, and in the Missouri

14  case, and make sure that it was done right.  Do you

15  understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you understand that in both cases

18  that would go up to what is called the Eighth Circuit Court

19  of Appeals, because Missouri and Nebraska are both part of

20  the Eighth Circuit.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that in both cases you

23  are giving up your right to appeal, unless you are claiming

24  that what you're admitting to here today is not a crime, or

25  you are claiming that Mr. Sena provided you with ineffective

1    assistance of counsel?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Collateral attack is different than an

4    appeal, like we've discussed before.

5            With a collateral attack you can challenge your

6    conviction and your sentence by claiming your constitutional

7    rights were violated.  Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  I've already discussed with you the

10   exceptions in the Missouri case, in that one you can

11   challenge on collateral attack if there's prosecutorial

12   misconduct and ineffective assistance of counsel.  Do you

13   understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  In Nebraska you can challenge if you

16   claim that what you're admitting to here today is not a

17   crime, or you are claiming that your attorney provided you

18   with ineffective assistance of counsel.  Do you understand

19   that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Have you talked to your attorney about

22   your appeal rights and your collateral attack rights?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Has he answered all of your questions

25   about both of those?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that your waivers of

3    appeal and your waivers of collateral attack, with the

4    exceptions listed in these plea agreements, apply both to you

5    conviction and to the sentence you've not yet received?

6          THE DEFENDANT:  Yes.

7          THE COURT:  After having your discussions with your

8    attorney, reading these documents, and asking all of the

9    questions you needed to ask, and getting those answers to

10   those questions, have you decided to give up your right to

11   appeal and your right to collateral attack with the

12   exceptions listed in these plea agreements?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Has anybody made any promises to you

15   that are not in these plea agreements?

16         THE DEFENDANT:  No.

17         THE COURT:  Do you understand that whether you plead

18   guilty or whether you're found guilty at trial you could get

19   the same sentence?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Putting it another way, do you

22   understand there's no guarantee your sentence will be less

23   because you've pled guilty rather than being found guilty by

24   a jury?

25         THE DEFENDANT:  Yes.

1          THE COURT:  At this time then I'm going to have

2    Ms. Woods explain the factual basis for the plea.

3          I'm going to start with this, though.  There's a

4    long factual basis in both of those plea agreements.

5          Did you have a chance to go over the plea agreements

6    with your attorney, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Did you read the factual basis in both

9    of the plea agreements?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Are the facts as set forth in those two

12   plea agreements the truth?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Then what I'm going to do at this point

15   is have Ms. Woods explain the key facts.

16         In other words, facts to support each element of the

17   case against you as to the counts to which you're pleading

18   guilty, instead of going over everything that's in the plea

19   agreement.

20         I want you to listen to what she says because I'm

21   going to ask you questions about that.  Ms. Woods?

22         MS. WOODS:  Thank you, Your Honor.  Actually that

23   transitions into what I am going to do with the Missouri

24   agreement.

25         Essentially the facts in Nebraska are the first

1      couple pages.

2              Since we are going to go over those in the District

3      of Nebraska agreement and they're not necessarily essential

4      for the firearm, I'm going to begin with the search warrant

5      in Missouri.

6              THE COURT:  Okay.

7              MS. WOODS:  Essentially, sir, that is the FBI

8      developed information that you were residing at a certain

9      address in St. Charles, Missouri, in the Eastern District of

10     Missouri.

11             They executed a search warrant there where they

12     found a hidden compartment in a wall where they located a

13     tactical vest, AR-15 magazines, approximately 190 rounds,

14     some large capacity magazines for a rifle, some tactical

15     White Feather ammunition, white supremacist documents, a copy

16     of Hitler's "Mein Kampf", some gunpowder, a pressure plate

17     which is typically designed as a trigger for an improvised ed

18     explosive device, as well as a handmade shield bearing a

19     swatztika.

20             As a result of that communications were had with

21     someone known to the defendant and the parties and at that

22     time that individual also turned over numerous firearms

23     belonging to you, and those firearms are specifically listed

24     out and there are, I believe, sixteen there, and one of them

25     is the firearm that is the basis of Count IV.

1          So those firearms included a machine gun with a

2    defaced serial number and then a short barrel rifle that was

3    less than 18 inches, that was not registered, and that is the

4    weapon that is the subject of Count IV.

5          And those firearms were not registered to you in the

6    National Firearms Registration and Transfer Record, which is

7    one of the core facts for Count IV.

8          That's my understanding of the critical facts for

9    Missouri, Your Honor.

10          THE COURT:  Mr. Sena, do you agree if this case went

11    to trial that evidence would go before a jury?

12          MR. SENA:  Yes, Your Honor.

13          THE COURT:  Mr. Wilson, did you listen as Ms. Woods

14    described that evidence against you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Is what she said the truth?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  Moving on then to the

19    Nebraska facts.

20          MS. WOODS:  Yes, Your Honor.  The key facts that

21    would have gone into evidence at trial in this case and that

22    are being undisputed between the parties are that on or about

23    October 19th, 2017, the defendant boarded a specific Amtrak

24    train in California and remained on board as it crossed into

25    the state of Nebraska and the District of Nebraska.

1          His luggage on that train consisted of a mask,

2    camera, knife, speed loaders, ammunition, identification

3    cards for the Nationalist Socialist Movement and a sleeping

4    bag.

5          He also carried a .380 caliber handgun on his person

6    during that trip.

7          With that handgun still on him he entered a secured

8    engine compartment of the train on October 21st, 2017.

9          There were signs posted outside it was an

10   unauthorized area.

11         He proceeded to disable the train and cut the lights

12   to the train which caused an emergency alert to go out.

13         Passengers were in the dark running up and down the

14   aisle and some were trying to escape through the windows in a

15   panic.

16         There were 175 passengers on board that day as well

17   as numerous Amtrak employees and conductors.

18         Amtrak trains are mass transportation vehicles as

19   defined by federal law.

20         One conductor located the defendant inside the

21   engine compartment of the train and he worked with a few

22   other conductors to forcibly remove the defendant.

23         As they worked together to subdue him the defendant

24   claimed to be the new conductor of the train.

25         While one conductor tried to subdue him the

1  defendant tried to break free and grabbed for his waistband

2  where first responders would later recover a handgun at the

3  time of his arrest.

4      Deputies responded from two counties in Nebraska to

5  the train scene which was in a remote area.

6      The first one that arrived on the scene located a

7  handgun on the defendant's waistband.

8      When approached by the deputy, the defendant denied

9  he was armed.

10     The second deputy wore a body camera on the outside

11  of his uniform.

12     This video footage captured the first deputy

13  disarming the defendant as one of the conductors assisted.

14     The video depicts the defendant turning towards the

15  second deputy as he walked up to the defendant and the

16  defendant makes a shooting sound at him, then turns to others

17  in the crowd and makes a shooting sound at the conductor.

18     The defendant uttered racial slurs and insults to

19  the conductor and when asked if he was a crazy fanatical type

20  replied no comment and he did admit to stopping the train.

21     An Amtrak investigator's summary of the incident

22  found the defendant did not -- did also make a statement

23  about taking a train to the stars and trying to find a

24  conductor, and that investigator's investigation did not

25  recover a specific statement of violence but he also did not

1    interview government witnesses and completed his

2    investigation at defense request.

3             In late December there was a search warrant executed

4    in Missouri which we have summarized in the Eastern District

5    case.

6             In addition to firearms and pressure plate

7    summarized there were also documents and evidence of the

8    defendant's ideologies.

9             A collection of papers were recovered that included

10   a few comments such as bushwhackers, guerillas, IRA, PLO, SS,

11   pretty much who I would like to be.

12            The defendant also wrote about Iran and Saudi are

13   going to duke it out pretty soon, need to get a plane ticket,

14   if someone knocked on the door I would go.

15            He wrote a play entitled "ISIS Patrols on America's

16   streets.

17            The defendant also was found to have purchased a

18   plane ticket with plans to travel to Syria in the year prior

19   to this incident.

20            It was further determined, though, that he decided

21   not to go, but the plan would have been to fight with ISIS.

22            There were also numerous derogatory and threatening

23   comments about the Jewish race, African-Americans, the

24   American government, and the media in these writings.

25            The defendant told his cellmate that he dropped acid

1    right before he loaded his weapon and entered the secure

2    compartment of the train.

3         THE COURT:  All right.  Mr. Sena, do you agree if

4    this case went to trial that evidence would go before a jury?

5         MR. SENA:  I would agree that evidence would be

6    presented to the jury, Your Honor.

7         THE COURT:  Mr. Wilson, did you listen as the

8    government described the evidence against you on the Nebraska

9    indictment?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Is everything she said true?

12        THE DEFENDANT:  I would like to dispute some things

13   she said on -- yeah, about the plane ticket and wanting to

14   fight with ISIS.

15        THE COURT:  Okay.  Other than that, other than those

16   comments, was it true?

17        THE DEFENDANT:  Yes, ma'am.

18        THE COURT:  Going to the Nebraska indictment, on

19   October 23rd of 2017 were you in Nebraska?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  While in Nebraska were you on an Amtrak

22   train?

23        THE DEFENDANT:  Yes, ma'am.

24        THE COURT:  Do you agree that an Amtrak train is a

25   train that crosses state lines, in other words from in this

1    case California going across Nebraska?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  While on the Amtrak train did you

4    attempt to stop the train?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Did you actually stop the train?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  In doing so were you trying to take

9    authority over the train?

10             THE DEFENDANT:  Uh --

11             THE COURT:  Why did you stop it?

12             THE DEFENDANT:  I was high.

13             THE COURT:  Were you attempting at that point in

14   time to --  well, do you know whether all of the lights went

15   off in the entire train?

16             THE DEFENDANT:  No, I couldn't tell you.

17             THE COURT:  Were you attempting to disable the train

18   from moving down the track?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Did you have on your possession at the

21   time a gun in your waistband?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Did you use that gun to threaten a

24   conductor?

25             THE DEFENDANT:  No.

1           THE COURT:  Did you use that gun in the conductor's

2    area?

3           THE DEFENDANT:  No.

4           THE COURT:  Did the conductor attempt to subdue you?

5           THE DEFENDANT:  Yes.

6           THE COURT:  While they were trying to do that did

7    you break free and tray to grab for your waistband where your

8    gun was?

9           THE DEFENDANT:  No.

10           THE COURT:  Well, let's go over what you said, and

11    you told me -- this is in your plea agreement.

12           As the conductors worked together to subdue the

13    defendant the defendant said, "I'm the conductor now, bitch."

14           While one conductor tried to subdue the defendant,

15    the defendant tried to break free and grab for his waistband

16    where first responders would later recover the handgun from

17    the defendant at his arrest.  Did you agree to that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Is that the truth?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And all this happened in Nebraska?

22           THE DEFENDANT:  Yes.

23           THE COURT:  All right.  Ms. Woods do you believe the

24    guilty plea -- do you have any additional questions on

25    Nebraska?

1         MS. WOODS:  I do, Your Honor.  I think we should

2   make sure it's clear that the carrier is engaged in

3   interstate commerce and that there were passengers on board

4   because it enhances the statutory penalty.

5         THE COURT:  I believe I did ask him about whether

6   Amtrak crosses state lines.

7         Do you agree that it covers, it goes across state

8   lines and it operates in interstate commerce?

9         THE DEFENDANT:  Yes.

10        THE COURT:  And do you agree that there were in

11  addition to you other passengers on board that train?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Any additional questions?

14        MS. WOODS:  No, Your Honor, thank you.

15        THE COURT:  Any additional questions, Mr. Sena?

16        MR. SENA:  No, Your Honor.

17        THE COURT:  Does the government believe as to

18  Count I of the Nebraska indictment that the guilty plea is

19  knowing, intelligent and voluntary?

20        MS. WOODS:  Yes, Your Honor.

21        THE COURT:  Do you agree, Mr. Sena?

22        MR. SENA:  Yes, Your Honor.

23        THE COURT:  Mr. Wilson, as to Count I of the

24  Nebraska indictment, do you have any questions?

25        THE DEFENDANT:  No, Your Honor.

1          THE COURT:  To the indictment which alleges that on

2     October 23rd of 2017, while in the District of Nebraska, you

3     did knowingly and without lawful authority attempt to

4     threaten to wreck, derail or disable a railroad train, in

5     this specific instance an Amtrak train that was traveling in

6     interstate commerce with passengers on board, what do you

7     plead?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  Now we are going to the Missouri one.

10    In December of 2017 did you have a residence in Missouri?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And was it in the Eastern District of

13    Missouri close to St. Louis?

14         THE DEFENDANT:  Yes.

15         THE COURT:  In that residence were you in possession

16    of firearms?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you have the firearms that are

19    listed in the guilty plea agreement from Missouri on pages

20    two through three?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Specifically were you in possession of a

23    nine millimeter Luger caliber CZ model Scorpion Evo 3 S1

24    rifle?

25         THE DEFENDANT:  Yes.

1        THE COURT:  And do you agree that it was not

2   registered with the National Firearms Registration and

3   Transfer Record?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Any additional questions?

6        THE DEFENDANT:  No, ma'am.

7        THE COURT:  Any additional questions, Ms. Woods?

8        MS. WOODS:  Just to be safe, Your Honor, did he know

9   it was required to be registered or should have been

10  registered?

11       THE COURT:  Did you know you were supposed to

12  register your firearms?

13       THE DEFENDANT:  Yes.

14       THE COURT:  Anything else?

15       MS. WOODS:  No, Your Honor.

16       THE COURT:  Mr. Sena?

17       MR. SENA:  Nothing further, Your Honor.  I just

18  noticed the plea agreement says October 21st.  We changed

19  that to the 23rd and initialed that.

20       MS. WOODS:  I think that on or about should

21  encompass that.

22       THE COURT:  I think we're okay.  To the Missouri

23  indictment, Count IV which alleges that in December of 2017

24  while in the District of Nebraska you did knowingly receive

25  and possess a firearm that was not registered in the National

1    Firearms Registration and Transfer Record, and that you

2    knowingly did so and that it was a rifle as we described

3    before, what do you plead?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  I do find that your guilty pleas as to

6    both the Nebraska indictment and the Missouri indictment are

7    knowing and voluntary and I will recommend that Judge Gerrard

8    accept your pleas of guilty.

9              I will also recommend that he accept your plea

10   agreements.

11             He will take up the issue of your plea agreements at

12   the time of sentencing.

13             We're looking at a sentencing date of October 5th at

14   ten.  Does that work for everyone?

15             MS. WOODS:  Yes, Your Honor.

16             MR. SENA:  Yes.

17             THE COURT:  Is there anything else we need to take

18   up at this time?

19             MS. WOODS:  No, Your Honor.  Thank you.

20             THE COURT:  Mr. Sena?

21             MR. SENA:  No, Your Honor.

22             THE COURT:  All right.  We are in recess.

23                  (10:34 a.m. - End of Proceedings)

24

25

1

2                           C-E-R-T-I-F-I-C-A-T-E

3          I, Allan G. Kuhlman, do hereby certify that the

4     foregoing transcript is a true and accurate transcription, to

5     the best of my ability, from the digital recording of the

6     proceedings held in this matter.

7              Dated July 27, 2018.

8

9                                    s/Allan G. Kuhlman
                                     Allan G. Kuhlman
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25